THE CONSOLIDATED GAS COMPANY OF THE CITY OF PITTSBURGH, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 29050.    Promulgated November 24, 1931.

*Frank C. Miller, C. P. A.*, for the petitioner.
*J. L. Backstrom, Esq.*, for the respondent.

OPINION.

MURDOCK: The Commissioner determined deficiencies of $289,-351.86 and $53,827.91 in the petitioner's income and profits taxes for the calendar years 1921 and 1922, respectively. The petitioner alleges that the Commissioner erroneously included in its income

for the respective years the sums of $986,625 and $472,404.16, representing the difference between the prices at which it acquired and retired certain of its bonds, and interest coupons attached thereto, and the par value of such bonds and coupons.

The facts were stipulated, as follows:

The petitioner is a corporation of the Commonwealth of Pennsylvania, having its office and principal place of business at 435 Sixth Avenue, Pittsburgh, Pennsylvania. Its business consisted of the manufacture and distribution of gas. On June 16, 1898, it issued for cash at par bonds having an aggregate par value of $5,000,000. The proceeds from the issuance of the bonds were used in refunding an existing debt, which existing debt was used in the acquisition of properties connected with the business of manufacturing and distributing gas.

On October 1, 1921, the petitioner acquired said bonds of the par value of $1,350,000, with unpaid interest coupons totaling $365,625, for a price of $729,000.

On October 18 and November 17, 1922, the petitioner acquired said bonds of the par value of $605,000, with unpaid interest coupons totaling $194,104.16, for a price of $326,700.

These bonds were coupon bonds calling for interest at the rate of five per centum per annum. The paper marked "Petitioner's Exhibit No. 1" is a copy of one of the bonds issued by petitioner. All of the bonds were in the same form. No interest was paid subsequent to that due and payable on February 1, 1916.

The bonds and coupons purchased by the petitioner as aforesaid were retired and cancelled in the years in which acquired.

At the time of purchase for retirement the prices paid for the bonds represented the market value of the bonds outstanding. The decrease in the value of the bonds as compared to the par value was primarily the result of the loss in value of the company's properties due to the business of manufacturing and distributing gas being terminated as the result of the development of natural gas.

In determining the petitioner's tax liability set forth in the deficiency notice, and upon which the deficiency in tax set forth in the deficiency notice was based, the respondent, for the year 1921, included as a part of the petitioner's income the sum of $986,625.00, representing the difference between the par value of the bonds purchased of $1,350,000.00 and accrued interest thereon of $365,625.00, or a total of $1,715,625.00, minus the price paid therefor of $729,-000.00, or the net sum of $986,625.00.

And for the year 1922 the respondent included as a part of the petitioner's income the sum of $472,404.16 representing the difference between the par value of bonds purchased of $605,000.00 and accrued interest thereon of $194,-104.16, or a total of $799,104.16, minus the price paid therefor of $326,700, or the net sum of $472,404.16.

The question in this case, as to whether or not the corporation had income from purchasing its bonds at less than the price at which they were issued, is almost identical with a similar question decided by the Board for the first time in *Independent Brewing Co. of Pittsburgh*, 4 B. T. A. 870. The principal difference between the two cases is that the Independent Brewing Company suffered a loss for

the taxable year from transactions other than that in which the bonds were repurchased, while in this case there is no proof of any such loss. Despite the fact that a good many Members of the Board never agreed with the majority and at various times indicated their dissents, the Board has heretofore uniformly held that no gain results from such a transaction. In the *Independent Brewing* case, *Bowers* v. *Kerbaugh-Empire Co.*, 271 U. S. 170, was cited as authority for the decision. On November 2, 1931, the Supreme Court decided the case of *United States* v. *Kirby Lumber Co.*, 284 U. S. 1, and it now becomes necessary to determine which of the two decisions of the Supreme Court is controlling in the present case.

In *Bowers* v. *Kerbaugh-Empire Co.* the court summarized the facts as follows:

The essential facts * * * are the loans in 1911, 1912, and 1913, the loss in 1913 to 1918 of the monies borrowed, the excess of such losses over income by more than the item here in controversy, and payment in the equivalent of marks greatly depreciated in value. The result of the whole transaction was a loss.

In the present case there were loans in 1898. However, the evidence does not show the loss of the monies borrowed or the excess of such losses over income by more than the item in controversy. The only evidence on this point is the sentence in the stipulation, " The decrease in the market value of the bonds as compared to the par value was primarily the result of the loss in value of the company's properties due to the business of manufacturing and distributing gas being terminated as the result of the development of natural gas." The bonds were repurchased at less than the price at which they were issued. But it does not appear that the result of the whole transaction was a loss.

In *United States* v. *Kirby Lumber Co.*, *supra*, the facts were: A loan in 1923 at par, a repurchase later in the same year of some of the same bonds at less than par. The court quoted the Treasury regulations, which provide that if a corporation purchases and retires any of its bonds at a price less than the issuing price, the excess of the issuing price over the purchase price is gain or income for the taxable year, and said: " We see no reason why the Regulations should not be accepted as a correct statement of the law." It next discussed the *Kerbaugh-Empire Co.* case, stating that in that case there had been a borrowing of money repayable in marks or their equivalent for an enterprise which failed. The marks had fallen in value at the time of payment, " which so far as it went was a gain for the defendant in error," but the transaction as a whole was a loss. The court then said:

Here there was no shrinkage of assets and the taxpayer made a clear gain. As a result of its dealings it made available $137,521.30 assets previously offset by the obligation of bonds now extinct. We see nothing to be gained by the discussion of judicial definitions. The defendant in error has realized within the year an accession to income, if we take words in their plain popular meaning, as they should be taken here. *Burnet* v. *Sanford & Brooks Co.*, 282 U. S. 359, 364.

In *Burnet* v. *Sanford & Brooks Co.* the Supreme Court pointed out that gain or profit, which is the subject of the tax, must be ascertained on the basis of fixed accounting periods and not on the basis of particular transactions when brought to a conclusion, unless the completed-contract method is used. In that case from 1913 to 1915 the taxpayer was working under a contract with the United States for dredging the Delaware River. In those years it reported the payments made under the contract as gross income and deducted the expenses paid in performing the contract. The total expenses exceeded the payments and the tax returns showed net losses. The work under the contract was abandoned in 1915 and the taxpayer sued to recover for breach of warranty of the character of the material to be dredged and recovered. The question then arose whether, when in 1920 the petitioner received the amount by which its expenses under the contract had exceeded receipts from it, it should report the amounts thus received as gross income. The Supreme Court held that it should report this amount as part of its gross income for 1920, the year in which it received it, even though the amount equaled and in a loose sense was a return of expenditures made in performing the contract. In the opinion of the court such receipts are a part of gross income regardless of whether the particular transaction results in net profit, for only by including these items in gross income for 1920 would it be possible to determine the taxpayer's net income for the period covered by the return. " The excess of gross income over deductions does not any the less constitute net income for the taxable period because respondent, in an earlier period, suffered net losses in the conduct of its business which were in some measure attributable to expenditures made to produce the net income of a later period." The court further held that losses from particular transactions are not to be set off against gains from others unless perchance the two are properly to be accounted for in the same taxable year. In distinguishing *Bowers* v. *Kerbaugh-Empire Co.* the court pointed out that in that case the taxpayer had neither made a profit on the transaction nor received any money or property which could have been made subject to the tax.

The facts in the present case differ from those in *Kirby Lumber Co.* in that in the latter case the repurchase was made in the same year that the money was originally loaned, while in the present case

the repurchase was made in a much later year. But it does not appear that this fact made any difference in the opinion of the Supreme Court for the regulations, which were approved as the correct statement of the law, do not make any distinction in this connection. Nor did the court find any difficulty in the fact that the taxpayer received no money or property in the year. In the *Kirby Lumber Co.* case the court remarked that there was no shrinkage of assets. In the present case the stipulation shows that there had been a shrinkage or loss in value of the company's properties and that this loss or shrinkage was the primary cause for the decrease in value of the bonds which enabled the taxpayer to repurchase the bonds at less than the issuing price. The repurchase at less than the issuing price was a gain so far as it went, and, as we read the authorities, it was also a part of the taxpayer's gross income for the year of the repurchase, unless it appears that the money borrowed was lost in an enterprise that failed. So far as we know the present petitioner did not lose the borrowed money in an unsuccessful enterprise, has suffered no losses in prior years, and may never suffer any loss even though its properties had shrunk in value at the time when the bonds were repurchased. Here as a result of its dealings the petitioner made available assets previously offset by the obligation of bonds now extinct. Therefore, it seems to us that the Commissioner was correct in determining that this petitioner had a gain on the repurchase of its bonds. *United States* v. *Kirby Lumber Co., supra; Burnet* v. *Sanford & Brooks Co., supra.* The scope of the decision in the *Kerbaugh-Empire Co.* case is not as broad as was thought in deciding the line of cases beginning with *Independent Brewing Co. of Pittsburgh,* and that line of cases is no longer authority for a situation such as exists in this case.

If this petitioner kept its books and made its tax returns on an accrual basis, then it must have deducted the face amount of the unpaid interest on its bonds as that interest accrued. In the taxable years it extinguished its obligation to pay this interest for less than the face amount of the coupons. As a result of this deal it made available assets previously offset by an obligation now extinct, and, under the *Kirby Lumber Co.* and *Sanford & Brooks* cases discussed above, it has had a gain which should be reported in its gross income. Furthermore, since it had previously deducted the full amount of the interest, it should restore to income the difference between that amount and the amount which it actually had to pay. Cf. *Chicago, Rock Island & Pacific Railway Co.,* 13 B. T. A. 988; affirmed as to this point in 47 Fed. (2d) 990; *Charleston & Western Carolina Railway Co.,* 17 B. T. A. 569; affd., 50 Fed. (2d) 342. If the petitioner used the cash receipts and disbursements basis, the result might be

different, but this fact does not appear from the stipulation. Thus, we must affirm the action of the Commissioner in respect to the interest, rather than reject it without knowing whether or not it was wrong.

Reviewed by the Board.

*Judgment will be entered for the respondent.*