GARLAND COAL & MINING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 57534. Promulgated June 9, 1933.

*William R. Spofford, Esq.*, for the petitioner.
*William E. Davis, Esq.*, for the respondent.

OPINION.

McMahon: This is a proceeding for the redetermination of a deficiency in income tax for the calendar year 1928 in the amount of $9,234.96.

It is alleged that the respondent erred (1) in increasing petitioner's net income by the amount of $52,960.20 representing the difference between the issuance price, $100,000, of certain of its own bonds, and $47,039.80, the amount paid by the petitioner in 1928 for the acquisition of such bonds; (2) in disallowing as a deduction the amount of $16,120.80 representing the amount of repairs accrued on petitioner's stripping shovel in 1928; and (3) in failing to allow as a deduction a reasonable allowance for depreciation sustained on property used in petitioner's business.

At the hearing petitioner abandoned the second assignment of error.

The parties entered into the following stipulation of facts:

1. The petitioner is a corporation organized under the laws of Delaware with its principal office at 135 Independence Square, Philadelphia, Pa.

2. On February 15, 1926 the petitioner executed and delivered a mortgage upon its properties located in the States of Arkansas and Oklahoma to the First National Bank of Muskogee, Oklahoma, as trustee, to secure an issue of Seven Per cent. Gold Bonds to the amount of $175,000. A copy of said mortgage, including description of the mortgaged premises, is attached hereto as Exhibit "A" and made part hereof.

3. The aggregate amount of bonds secured by said mortgage, to wit, $175,000, were issued in 1926 at par.

4. On January 1, 1928 petitioner had outstanding A Bonds in the principal amount of $60,000 and B Bonds in the principal amount of $100,000.

5. During 1928 petitioner paid off $20,000 principal amount of A Bonds at par. The A Bonds so paid off were retired and canceled by the trustee.

6. In 1928 the petitioner acquired $100,000 principal amount of B Bonds by purchase at a cost of $47,039.80. The B Bonds were all acquired in one transaction and the purchase price was a lump sum for the lot. The petitioner held these bonds in its treasury throughout 1928.

7. The balance sheets attached as Schedule K to petitioner's income tax return filed for 1928 are attached hereto as Exhibit "B" and made part hereof.

8. In February 1929 the petitioner delivered the B Bonds purchased in 1928 to the First National Bank of Muskogee, Oklahoma, trustee under the mortgage, and the trustee thereupon canceled and retired said bonds and caused the mortgage to be satisfied of record. In February 1929 the balance of the A Bonds were paid off at par.

9. Petitioner did not report the difference between the issuance price of the B Bonds, $100,000, and the purchase price, $47,039.80, as taxable income. Respondent has included $52,960.20 in taxable income.

10. It is agreed that the petitioner sustained depreciation in the operation of its Oklahoma property during 1928 in the amount of $24,629.76, which said amount should be allowed as a deduction in determining petitioner's net income for 1928.

The mortgage referred to in the stipulation as exhibit A is incorporated herein by reference. It provides for the issuance of $75,000 face value of class A bonds, and $100,000 face value of class B bonds, and contains, among others, the following provision:

12. The company [the petitioner] covenants that no funds or credits of the company will be used for the purchase, redemption or discharge, prior to maturity, of any bond or coupon of Class B so long as any bond of Class A is outstanding, or for the payment of any matured principal or interest on any bond of Class B so long as any matured principal or interest of any bond of Class A is outstanding and unpaid, or for the payment in any one year, so long as any bond of Class A is outstanding, of any amount on account of principal or interest of the bonds of Class B, other than the items maturing within such year according to such bonds and coupons as now executed; and that it will not accept, directly or indirectly, any bonds or coupons secured hereby as payment on account of any coal purchased from it.

The balance sheets referred to in the stipulation as exhibit B are as follows:

GARLAND COAL & MINING COMPANY

SCHEDULE K—BALANCE SHEET

| | Beginning of Taxable Year | End of Taxable Year |
|---|---|---|
| **ASSETS** | | |
| INVESTMENT | | |
| Coal Mining Property | $343,819.12 | $344,807.86 |
| Other Real Estate—Rent Houses and Lots—Ark | 643.75 | 643.75 |
| Other Investments—Leaseholds & Contracts | 90,272.00 | 90,272.00 |
| CURRENT ASSETS | | |
| Cash | 17,858.82 | 61,804.46 |
| Accounts Receivable | 30,481.18 | 26,206.20 |
| Materials and Supplies | 12,689.25 | 10,616.20 |
| DEFERRED ASSETS | | |
| Tax Titles Purchased | | 131.20 |
| UNADJUSTED DEBITS | | |
| Royalties and Insurance Paid in Advance | 4,679.27 | 3,368.75 |
| Taxes paid in Advance | 75.91 | 76.93 |
| Stripping Suspense | 7,796.64 | 4,407.15 |
| Tax Titles Purchased | 131.20 | |
| Securities Issued or Assumed—Unpledged | | |
| 12/31/28 $100,000 | | |
| 1/1/28 None | | |
| | $508,447.14 | $542,334.50 |

350

GARLAND COAL & MINING COMPANY

| | Beginning of Taxable Year | End of Taxable Year |
|---|---|---|
| LIABILITIES | | |
| STOCK | | |
| Capital Stock | $200,000.00 | $200,000.00 |
| LONG TERM DEBT | | |
| First Mortgage Bonds _____ $140,000. | | |
| Less Amt. in Treasury 12/31 _____ 100,000. | 160,000.00 | 40,000.00 |
| in Treasury 1/1 _____ None | | |
| CURRENT LIABILITIES | | |
| Notes payable | 38,000.00 | 50,039.80 |
| Audited Accts. and Wages Payable | 18,130.59 | 6,399.78 |
| Miscellaneous Accts. Payable | 5,859.49 | 10,820.13 |
| Unmatured Interest Accrued | 5,547.48 | 1,781.03 |
| Other Current Liabilities | 31.15 | 31.15 |
| Unmatured Royalty Accrued | 98.38 | ------------ |
| UNADJUSTED CREDITS | | |
| Reserve for Taxes | 248.10 | 5,667.58 |
| Insurance and Casualty Reserve | (Red) 962.33 | 46.86 |
| Equalization Reserve | ------------ | 16,120.80 |
| Accrued Depreciation | 63,565.42 | 94,888.79 |
| Other Unadjusted Credits | 45.73 | 983.00 |
| CORPORATE SURPLUS | | |
| Profit and Loss—Credit Balance | 17,883.13 | 115,555.58 |
| | $508,447.14 | $542,334.50 |

The $100,000 item representing bonds purchased by the petitioner in the year 1928 is not included in the above figure of $542,334.50, representing the total assets of the petitioner at the end of the year 1928. However, in the balance sheet the liabilities were reduced by the amount of $100,000, representing bonds which were purchased. It is to be noted that on the balance sheets under "corporate surplus" there is shown a profit and loss credit balance of $115,555.58 at the end of the year 1928, whereas such credit balance was $17,883.13 at the beginning of the year. For aught we know the item of $52,960.20, representing the difference between the issuing price of the bonds and the amount petitioner paid to purchase the bonds, is included in the item of $115,555.58, representing surplus. If so, then the petitioner itself must have considered the $52,960.20 as a profit. That that was not so has not been established by the proof.

The petitioner contends that the action of the respondent in including the amount of $52,960.20, representing the difference between the issuing price of the B bonds and the amount paid by petitioner to purchase them, in petitioner's taxable income for the year 1928, was erroneous. The petitioner's position is that these bonds, not having been surrendered to the trustee for cancellation, should be treated as any other corporate security and that no taxable income results until the bonds are "retired." It points out that article 68 (1) (c) of Regulations 74 [1] under the Revenue Act of 1928 provides that gain or income is recognized if bonds are *purchased and retired*

[1] ART. 68. (1) (c) If, however, the corporation purchases and retires any of such bonds at a price less than the issuing price or face value, the excess of the issuing price or face value over the purchase price is gain or income for the taxable year.

in the taxable year. Petitioner points out that such provision has been in all regulations promulgated by the respondent since 1918, and that in *United States* v. *Kirby Lumber Co.*, 284 U.S. 1, the Supreme Court stated, with regard to the same provision of Regulations 62 under the Revenue Act of 1921, " We see no reason why the regulations should not be accepted as a correct statement of the law." In that case the taxpayer issued certain of its bonds at par and later in the same year purchased in the open market some of the same bonds at less than par. The Supreme Court there held that the difference between the amount which petitioner originally received for the bonds and the amount which it paid in the purchase of them constituted taxable income. The petitioner points to the fact that in that case the bonds were " retired " and claims that that fact distinguishes that case from the instant proceeding. See opinion of the Court of Claims in *Kirby Lumber Co.* v. *United States*, 44 Fed. (2d) 885; affirmed in *United States* v. *Kirby Lumber Co.*, *supra*, wherein it appears that the bonds were " retired."

In the instant proceeding it is our opinion that the bonds in question were " retired " in 1928 within the meaning of the regulations, despite the fact that they were not actually turned over to the trustee and canceled until 1929.

The word " retire " is defined in Webster's New International Dictionary, 1929, as " To withdraw from circulation, or from the market; to take up or pay; as, to *retire* bonds; to *retire* a note."

In the instant proceeding the bonds in question were, in 1928, certainly withdrawn from circulation and taken up and paid for all practical purposes as between the holders of the bonds and the petitioner. If the regulations were construed to mean that bonds must be completely canceled before gain or loss is recognized, then, in our opinion, such regulations would not correctly interpret the law.

In *United States* v. *Kirby Lumber Co.*, *supra*, the Supreme Court referred to the provisions of the Revenue Act of 1921, which state that gross income includes " gains or profits and income derived from any source whatever " and stated:

We see nothing to be gained by the discussion of judicial definitions. The defendant in error has realized within the year an accession to income, if we take words in their plain, proper meaning, as they should be taken here. * * *

The Revenue Act of 1928, in section 22, contains provisions identical with those of the Revenue Act of 1921 with which the Supreme Court was concerned in the *Kirby Lumber Co.* case. It is true, as pointed out by the petitioner, that the purchase by the petitioner of the bonds in question was in violation of clause 12 of the mortgage and that under the terms of such mortgage the trustee could not be

required to cancel such bonds if petitioner had presented them for that purpose. Petitioner further states in its brief that the trustee could have required the petitioner to dispose of the bonds. Assuming, but not deciding, that the trustee or the holders of A bonds could have challenged the action of petitioner in purchasing the B bonds, the fact remains that they did not do so. Furthermore, that is a matter between those parties with which we are not concerned. Here the ultimate fact is that in the year 1928 the petitioner did discharge its obligation to pay $100,000 by paying $47,039.80 and did not resell the bonds. The difference of $52,960.20 constituted a gain or profit or income under the statute and within the rule of *United States* v. *Kirby Lumber Co., supra.* See also *Twin Ports Bridge Co.,* 27 B.T.A. 346. The purchase of the bonds by the petitioner constituted such a closed transaction as gives rise to recognizable gain or loss under the revenue act. The fact that the petitioner had such bonds available for resale is not controlling. Such a resale would be an entirely new transaction.

We held that the respondent properly held that the amount in question is taxable income in the year 1928.

It has been stipulated that the petitioner sustained depreciation in the operation of its Oklahoma properties during the year 1928 in the amount of $24,629.76, and that that amount should be allowed as a deduction in determining petitioner's net income for 1928. Adjustment will be made accordingly under Rule 50.

Reviewed by the Board.

*Decision will be entered under Rule 50.*