VIRGINIA IRON, COAL AND COKE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 51576. Promulgated February 13, 1934.

*L. A. Nuckols, Esq.*, for the petitioner.
*J. A. Lyons, Esq.*, for the respondent.

### OPINION.

MORRIS: This proceeding is for the redetermination of deficiencies in income tax of $11,794.94, $14,913.92, and $16,967.68 for the calendar years 1922, 1923, and 1925, respectively.

Two questions are raised for our consideration; whether income arising from the purchase by a taxpayer of its own bonds is to be reported in the year in which the purchase is made or in the year when the bonds are canceled and retired, when purchase and cancellation do not occur in the same year, and whether the amount of the gain is the difference between the issuing price and the purchase price or the March 1, 1913, value and the purchase price when the bonds were issued prior to that date, and the value as of that date was less than the issuing price.

The petitioner is a corporation organized under the laws of Virginia, with its principal office at Roanoke. At or about the time of its organization in 1899 it executed and issued 8,940 first mort-

gage 5 percent bonds of the par or face value of $1,000 each, secured by a first mortgage upon certain of its properties. These bonds were due and payable 50 years after their date. All of the 8,940 bonds were issued by the petitioner for cash or the equivalent equal to their par or face value. The fair market value on March 1, 1913, of all of its bonds then outstanding was $970 per bond of the par or face value of $1,000.

During the calendar year 1922 the petitioner canceled and retired 523 of the bonds of a total par or face value of $523,000, which prior to such cancellation it had reacquired from the holders thereof for the aggregate sum of $447,531.25, or $75,468.75 less than the issuing price of the bonds so canceled and retired, and $59,778.75 less than their fair market value as of March 1, 1913. During the calendar year 1922 the petitioner purchased and reacquired 227 of its bonds from the holders thereof for the aggregate sum of $212,628.75, or $14,371.25 less than the issuing price of the bonds so acquired and $7,561.25 less than their fair market value as of March 1, 1913.

During the calendar year 1923 the petitioner canceled 11 of said bonds of a total par or face value of $11,000, which petitioner prior to cancellation had reacquired from the holders thereof for the aggregate sum of $9,571.62, or $1,428.38 less than the issuing price of the bonds so canceled and retired, and $1,098.38 less than their fair market value as of March 1, 1913. During the calendar year 1923 the petitioner purchased and reacquired 322 of its said bonds from the holders thereof for the aggregate sum of $297,488.75, or $24,511.25 less than the issuing price of the bonds so acquired, and $14,851.25 less than their fair market value as of March 1, 1913.

During the calendar year 1925 the petitioner canceled and retired two of the bonds of a total par or face value of $2,000, which prior to such cancellation it had reacquired from the holders thereof for the aggregate sum of $1,651.40, or $348.60 less than their issuing price, and $288.60 less than their fair market value as of March 1, 1913. During the same calendar year the petitioner purchased and reacquired 64 of its bonds for the aggregate sum of $58,212.50, or $5,787.50 less than the issuing price, and $3,867.50 less than their fair market value as of March 1, 1913.

During the taxable years in question the petitioner kept its accounts and made its income tax returns on the calendar year basis and in accordance with the accrual system of accounting.

In making its income tax returns for the years 1922, 1923, and 1925 the petitioner did not report any income from the transactions hereinabove set forth. The respondent in determining the deficiencies treated the difference between the par value of the bonds canceled and retired in each of said years and the purchase or re-

acquired price paid by the petitioner therefor as income to the petitioner for each of said years.

The first contention of the petitioner is that the income derived by it from the purchase of its bonds accrued during the year in which the purchase took place and not in the year in which the bonds theretofore purchased were canceled and retired. This issue is decided in favor of the petitioner on the authority of *Garland Coal & Mining Co.*, 28 B.T.A. 348.

In order to determine the petitioner's second contention, namely, that the measure of gain is the difference between the purchase price and the March 1, 1913, value of the bonds, it is necessary to consider briefly the basis of the Supreme Court's decision in *United States* v. *Kirby Lumber Co.*, 284 U.S. 1, holding that such a transaction gives rise to taxable gain. The Court held there was no shrinkage of taxpayer's assets and as a result of its dealings it made available assets previously offset by the obligation of bonds now extinct. The use of March 1, 1913, value as a measure of gain must be predicated on the theory that part of the gain accrued prior to that date. If the gain, however, results from the freeing of assets previously obligated, no portion of that gain could have accrued prior to March 1, 1913, as the obligation on the bonds as of that date was equivalent to their par or face value. Although the market value may have been less, there was no proportionate freeing of assets or making them available. The obligation was the same, and remained so until extinguished through purchase. We are unable to agree with the petitioner that part of the gain accrued prior to March 1, 1913, and that therefore the value as of that date should be used in measuring the gain.

Although the question of March 1, 1913, value was not involved in the *Kirby* case, the bonds having been issued and repurchased in 1923, the Supreme Court approved the regulations as a correct statement of the law. Article 545 (1) (c) of Regulations 62, and a similar provision appears in subsequent regulations, sets the amount of gain as the excess of the issuing price or face value over the purchase price. The same conclusion was reached by the Board in *Consolidated Gas Co. of Pittsburgh*, 24 B.T.A. 901, in which the bonds in question were issued in 1898.

*Judgment will be entered under Rule 50.*