MONTANA, WYOMING & SOUTHERN RAILROAD COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 71486.   Promulgated August 9, 1934.

*Henry J. Richardson, Esq.,* for the petitioner.
*Paul A. Sebastian, Esq.,* for the respondent.

#### OPINION.

ARUNDELL: The taxes in controversy here relate to the year 1930 and amount to $1,820.10.   An original deficiency of $4,367.52 for the year 1930 was determined by the respondent, of which sum the petitioner paid $2,547.42.   In its petition the petitioner states that it reserves the right to claim and recover refund of this sum paid, but fails to make further issue respecting it, either at the hearing or in its brief.   This part of the tax will, therefore, be disregarded in this report.

This case has been submitted upon a stipulation of facts filed by the parties at the hearing, and we set forth so many as are necessary to a disposition of the question for decision.

The petitioner is a railroad corporation, organized under the laws of the State of New Jersey in 1909, for the purpose of acquiring and operating railroad properties then owned and operated by the Yellowstone Park Railroad Co., a corporation.   Its books and accounts are kept on the accrual basis.

At the time of its organization on September 1, 1909, petitioner acquired all of the property and assets of the Yellowstone Park Railroad Co., paying therefor $1,000,000 par value of its capital stock and $900,000 par value of first mortgage bonds, maturing 30 years after date of issuance.   These bonds were part of an authorized issue of $5,000,000, the remainder of which was never issued.

At the time of the purchase of the Yellowstone Park Railroad properties, the petitioner set them up on its property account at a cost equivalent to the par value of the stock and bonds given in payment, and has, at all times since, carried them at that figure, to wit, $1,900,000, in its books.   The cost so entered has never been questioned by the respondent.

At the time the bonds were authorized in 1909 and a part thereof issued, an option was given by petitioner in connection with the issue of any additional bonds to an underwriter by which, in the

event of an additional issue of the bonds covered by the mortgage, the company would receive $820 per $1,000 bond.

During the year 1930 the petitioner purchased $55,000 par value of its said bonds for the cash price of $39,832.50. These bonds were carried in petitioner's books under the caption "Investments in Securities Issued", and no adjustment was made on its books reducing the amount of the outstanding bonds due to this purchase, none of the bonds were canceled and none have been resold or otherwise disposed of.

Under these circumstances the respondent has held that the petitioner, in the purchase of its bonds in 1930, has realized taxable income equal to the difference between the price paid and their par or face value.

The principle applicable here is that of *United States* v. *Kirby Lumber Co.*, 284 U.S. 1, and *Helvering* v. *American Chicle Co.*, 291 U.S. 426, in both of which the taxpayers bought in bonds at less than face value. In the *Kirby Lumber* case the sale and purchase were for cash; in the *American Chicle* case the bonds were those of a predecessor and had been assumed by the taxpayer, which purchased them for cash. Here the bonds were issued for property and the purchase was for cash. The property acquired for the bonds was entered on the books at a cost equal to the face value of the bonds, and that cost has ever since been regarded as correct by both parties. Referring now to the transaction in 1930, at the beginning of the year petitioner had $55,000 in assets on its books against which were outstanding liabilities (bonds) of an equal amount. Upon the acquisition of the bonds its assets were reduced by $39,832, and its liabilities by $55,000. The net result of this, when assets are weighed against liabilities, was an increase in assets of $15,167.50. This, as we understand it, is the basis upon which the *Kirby Lumber* and *American Chicle* cases are grounded; that is, that by reason of the transaction there were "made available * * * assets previously offset by the obligation of bonds now extinct" and this resulted in "an accession to income." *Kirby Lumber Co., supra.*

A difference suggested by petitioner between this case and the *American Chicle Co.* case is that here the bonds were not retired. The Board has held that this distinction is immaterial. *Garland Coal & Mining Co.*, 28 B.T.A. 348; *Virginia Iron, Coal & Coke Co.*, 29 B.T.A. 1087.

It is also suggested by petitioner that the stipulated facts establish an issued price for the bonds less than that determined by the respondent, relying presumably upon the option given for additional bonds in 1909. The option, however, related to additional

64

bonds that were authorized but were never issued, and this is insufficient to change the respondent's determination as to the cost of those bonds that were issued.

We find no fundamental distinction in the facts here from *American Chicle Co.* that would permit us to reach a contrary conclusion. *Commissioner* v. *Coastwise Transportation Corp.*, 71 Fed. (2d) 104; *Consolidated Gas Co. of Pittsburgh*, 24 B.T.A. 901; *Woodward Iron Co.*, 24 B.T.A. 1050; and *Garland Coal & Mining Co., supra.*

*Decision will be entered for the respondent.*