TRANSYLVANIA RAILROAD COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 79517. Promulgated July 16, 1937.

*J. M. McCready*, Esq., for the petitioner.
*Byron M. Coon*, Esq., for the respondent.

OPINION.

MILLER: The petitioner in 1932 bought $19,000 par value of its outstanding bonds for $4,750. The respondent held that the difference of $14,250 was a taxable gain and determined a deficiency. This determination the petitioner assails on the theory, first, that it did not retire the bonds and, second, that the value of its entire assets in 1932 was less than the amount of outstanding bonds and that consequently no assets were freed by the purchase.

1. It is not necessary that reacquired bonds be retired in order that gain accrue from the purchase. This question has been decided by the Board, adversely to the petitioner, in *Garland Coal & Mining Co.*, 28 B. T. A. 348; affd., *Garland Coal & Mining Co.* v. *Helvering*, 75 Fed. (2d) 663; *Virginia Iron, Coal & Coke Co.*, 29 B. T. A. 1087; and *Montana, Wyoming & Southern Railroad Co.*, 31 B. T. A. 62; affd., 77 Fed. (2d) 1007; certiorari denied, 296 U. S. 604; applying the decisions of the Supreme Court in *United States* v. *Kirby Lumber Co.*, 284 U. S. 1, and *Helvering* v. *American Chicle Co.*, 291 U. S. 426.

The petitioner says that it did not and would not retire these bonds because by keeping them alive it got the interest from the Southern Railway. This may be a good reason between the parties for recognizing the continuing obligation of the Southern to pay— whether as interest or rent would be unimportant between them. But it does not serve petitioner in the present controversy. When it acquired its own bonds it became in form both debtor and creditor

and thus it wiped out its obligation *qua* obligation, irrespective of its continuing right to rent. To be sure, it could have revitalized its obligation by selling these bonds, cf. *Garland Coal & Mining Co.* v. *Helvering, supra*, or pledging them as collateral security, *Washington Loan & Trust Co.* v. *Blair*, 75 Fed. (2d) 671, but this would give a new interest against petitioner which is properly to be recognized when it becomes actual. As we said in *Garland Coal & Mining Co., supra:* "The purchase of the bonds by the petitioner constituted such a closed transaction as gives rise to recognizable gain or loss under the revenue act. The fact that the petitioner had such bonds available for resale is not controlling. Such a resale would be an entirely new transaction."

The petitioner relies upon the use of the word "retires" in article 68 (1) (c) of Treasury Regulations 77 and upon statements contained in *Garland Coal & Mining Co.* v. *Helvering, supra*, concerning the intention of the taxpayer to retire repurchased bonds. It is sufficient in this regard to quote from that case as follows:

To say, as the regulation does say, that when bonds are purchased and retired at less than the selling price, the excess is income, is by no means to say that when they are purchased, but not retired, it is not income; and if the regulation must be so construed, the question whether it violates the terms of the statute (Revenue Act 1928, § 22 (a), 26 U. S. C. A., § 2022) would at least be arguable, but we have no need to pass upon that question here.

2. It is true that a prima facie showing of gain, from the repurchase of bonds at a price less than issuing price, may be rebutted by evidence that the entire business in which the borrowing was a factor resulted finally in a loss, *Bowers* v. *Kerbaugh-Empire Co.*, 271 U. S. 170, and by evidence that the original bond issue brought nothing to the taxpayer's treasury which was freed by the reacquisition of the bonds, *Commissioner* v. *Rail Joint Co.*, 61 Fed. (2d) 751.

On the other hand, a showing of shrinkage in value, alone, is not sufficient to rebut a prima facie case. *Consolidated Gas Co. of the City of Pittsburgh*, 24 B. T. A. 901. In the case last cited it appeared that there was a shrinkage or loss in value of the company's properties, used for manufacturing gas, resulting from the development of natural gas; which shrinkage was the primary cause for decrease in the value of the bonds repurchased. See also *Commissioner* v. *Coastwise Transportation Corporation*, 71 Fed. (2d) 104; certiorari denied, 293 U. S. 595.

In the instant case petitioner has failed to sustain its burden of proving either that the entire business in which the borrowing was a factor resulted finally in a loss or that the original bond issue brought nothing to the taxpayer's treasury which was freed by the reacquisition of the bonds. Petitioner's sole witness was obviously little

acquainted with the physical properties of the railroad. The books of the petitioner apparently contained no information concerning those properties since 1905. The witness admitted on cross-examination that he had no information on the subject except what was in the books. He stated that he had made no attempt to compute the value of the properties for 1932. Presumably full information was available to the petitioner, upon the subject, because its lease agreement with the Southern Railway Co. required the lessee to keep a full record and account concerning the same. Obviously petitioner has failed to show a failure of assets, or loss of the money originally borrowed. On the contrary, the evidence showed that the property of petitioner was still valued on its books at the same price as when the bonds were issued; and that the Southern Railway has paid each year the amount specified in the lease, which includes both interest on the bonds and several thousand dollars in addition. There was no evidence of dissatisfaction upon the part of the lessee; nor upon the part of the bondholders, except those few who, in the depression year of 1932, offered to sell the bonds which were purchased by the petitioner. The lease still had 24 years to run, and there was not an iota of evidence that the lessee would fail to perform as it was required to do. Its present performance—up to the time of the hearing in 1936—was all that could have been expected or hoped for at the time of the execution of the lease, when, presumably, the petitioner's prospects were brightest.

We conclude, therefore, that assets of the petitioner were released by the purchase of its own bonds at a price less than issuing price; that taxable gain was realized thereby; and that the Commissioner's determination was correct.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

---

LEECH, dissenting: The majority holds that petitioner, a corporation, realized taxable gain in the purchase of its own bonds at less than the issuing price, in spite of what I think is the conclusively established fact that it did not then intend nor has it since intended to cancel or retire these purchased bonds.

This conclusion is said to be supported by *Garland Coal & Mining Co.* v. *Helvering*, 28 B. T. A. 348; affd., 75 Fed. (2d) 663, which is the only court or Board case cited, touching the point. Instead of supporting that conclusion, in my judgment, the opinion of the court in that case definitely and convincingly opposes it.

The taxpayer there purchased its own bonds in 1928 for less than their issuing price, and retired them in the following year. The

only question presented was in which of those years petitioner's admitted gain was taxable. The answer to this inquiry was dependent on whether, in view of the respondent's applicable regulation (Regulations 74, art. 68 (1) (c)), retirement of the purchased bonds was necessary to establish the transaction as "closed", and thus give rise to gain.

Without doing more than doubting the validity of that regulation, the court recognized the existence of the superficially anomalous but nevertheless widely adopted rule that, whether the purchase of its bonds by a corporate obligor constitutes payment of the purchaser's debt evidenced by the bonds, and thus is a "closed" transaction for tax purposes, depends upon the intention of the purchaser when it purchased the bonds. Thus, the court in that case, after stating this rule and citing a few of the many authorities therefor, says in the following paragraph of its opinion:

And so, in this case the question is, the intention of petitioner when it redeemed its bonds.

The court then decided that the mere purchase of the bonds in 1928 was a closed transaction, and that a taxable gain resulted *then* and not in 1929 when the bonds were actually retired, *solely* because the evidence established the *fact* that when petitioner purchased the bonds it then intended to retire them and so pay its debt thus evidenced. The actual retirement of the bonds was only corroborative of petitioner's book entries during the year of purchase, which indicated its then intention to retire the bonds. And, of course, the fact that the bonds were not actually retired until the next year could not and did not change the decisive *fact* that the bonds were purchased with the intention of retiring them. It seems to me this interpretation of the meaning of the court in its opinion in the *Garland* case is confirmed rather than disputed from the excerpt of that opinion appearing here in the majority opinion.

If that intention of the purchaser of the bonds be controlling, it would be difficult to conceive a stronger case than this, proving that such intention was not to buy and retire the bonds, but was to keep them alive, as an investment. The Southern Railway Co., not the obligor, purchaser of the bonds, was obligated to pay the interest on them. That fact distinguishes the situation here from that in the *Garland* case and is convincing to me that the petitioner purchased its bonds here with the intention, not of retiring them, but of keeping the obligation they reflected, alive.

It seems to me that the rationale of the majority opinion faces the dilemma of either violating the elementary rule that a debt once paid is thereby extinguished and can not be revived thereafter, or

recognizing the rule of intention for which I contend, in that the sale or pledge of such purchased bonds legally continues the obligation they evidence. I think the sale or pledge of such bonds, after their purchase, merely establishes the necessary fact to their continuing validity that the intention of the purchaser was not to retire the bonds but to keep them alive. Cf. *Garland Coal & Mining Co.* v. *Helvering, supra; R. J. Reynolds Tobacco Co.*, 35 B. T. A. 949. Therefore, I do not think the petitioner realized taxable income by its purchase of its own bonds for less than the issuing price, and, accordingly, dissent.