TWIN PORTS BRIDGE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 41695. Promulgated December 19, 1932.

*Clarence J. Hartley, Esq.*, for the petitioner.
*M. M. Mahany, Esq.*, for the respondent.

## OPINION.

McMahon: The petitioner, in order to further the enterprise in which it was interested, caused the organization of the Arrowhead

Company in February, 1926, to carry out the contemplated project. For this purpose the petitioner conveyed or transferred certain of its assets to the Arrowhead Company, receiving in payment therefor in May, 1926, stock of the Arrowhead Company as follows: 200 shares of first preferred stock, 708 shares of second preferred stock, both of the par value of $100 per share, and 6,400 shares of common stock of no par value, the price of which was fixed at $1 per share. This transaction was conceded by respondent to be nontaxable and it is not involved herein except as it may affect the basis to be used for the purpose of determining gain or loss in the transaction which is involved herein.

During 1926 the petitioner transferred to a number of its creditors 104 shares of Arrowhead second preferred stock of a total par value of $10,400, in payment of services or property in the total sum of $10,400. This is the transaction involved in this proceeding. The respondent contends that the difference between $10,400, the total amount of debts paid, and the cost to petitioner of the 104 shares of Arrowhead second preferred stock is taxable gain.

The petitioner contends that the respondent erred in treating the transaction as a sale of the 104 shares of Arrowhead second preferred stock at par; that the Arrowhead stock has no market or determinable value; and that the respondent erred in fixing a unit cost price for the various classes of stock. It contends that the transaction was nothing more than an exchange of two things of doubtful value; that no fair apportionment of the cost price or of the value of the various classes of stock could possibly be made; and that consequently petitioner is entitled to charge the entire cost of the assets against stock received until the cost is extinguished, and cites in particular article 1567 of Regulations 62, which is in part as follows:

* * * If property is exchanged for two kinds of property and no gain or loss is recognized under articles 1564 and 1566 the cost of the original property should be apportioned, if possible, between the two kinds of property received in exchange for the purpose of determining gain or loss upon subsequent sale. If no fair apportionment is practicable, no profit on any subsequent sale of any part of the property received in exchange is realized until out of the proceeds of sale shall have been recovered the entire cost of the original property. * * *

The first question to be determined is whether the payment by the petitioner of its debts in the aggregate amount of $10,400 by the transfer of 104 shares of stock of another corporation of the par value of $10,400, acquired by petitioner at less than par, resulted in taxable gain to the petitioner.

Section 213 of the Revenue Act of 1926 defines gross income as including "gains, profits, and income derived from salaries, wages, or compensation for personal service, * * * of whatever kind

and in whatever form paid, or from * * * sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; * * * or gains or profits and income derived from any source whatever." This section also requires that the amount of such items, except as otherwise provided, shall be included in the gross income for the taxable year in which received by the taxpayer.

A debt is defined in its general sense as " a specific sum of money which is due or owing from one person to another, and denotes not only the obligation of the debtor to pay, but the right of the creditor to receive and enforce payment," *J. S. Cullinan*, 19 B. T. A. 930; and is property in the hands of the creditor, *Portuguese-American Bank* v *Welles*, 242 U. S. 7. That shares of stock are property is elementary and needs no citation of authority. Under the express terms of the statute, gains, profits, or income derived from " dealings in property " or " from any source whatever " are within the term " gross income."

In *United States* v. *Kirby Lumber Co.*, 284 U. S. 1, it was held that where a corporation issued its own bonds, for which it received par value, and later in the same year purchased in the open market some of the bonds at less than par, the excess of the issuing price or face value over the purchase price is taxable gain or income for the taxable year, and within the definition of gross income under section 213 (a) of the Revenue Act of 1921, i. e., " gains or profits, and income * * * derived from any source whatever." In distinguishing *Bowers* v. *Kerbaugh-Empire Co.*, 271 U. S. 170, the court, in its opinion, states: " But the transaction [involved in the Kerbaugh-Empire case] as a whole was a loss, and the contention was denied. Here there was no shrinkage of assets and the taxpayer made a clear gain. As a result of its dealings it made available $137,521.30 assets previously offset by the obligation of bonds now extinct."

In this proceeding we have unsecured debts or accounts payable of the petitioner paid for with stock of another corporation, whereas in the *Kirby Lumber Co.* case, *supra*, bonds of the taxpayer were sold for cash at the par value and repurchased for cash at less than par value. In the instant proceeding debts of the aggregate amount of $10,400 were paid with stock of the par value of $10,400 which was acquired at less than par, whereas in the *Kirby Lumber Co.* case, debts were paid in cash in an amount less than the amount of·debts paid; and in the instant proceeding the debts represented property and services received, whereas in the *Kirby Lumber Co.* case the debts or bonds represented money received. We do not believe that the differences are material. There is no evidence that such debts were

not valid and subsisting obligations of the petitioner. Nor is there any evidence that the debts were compromised or that the creditors intended to forgive or cancel part of such debts without payment therefor.

Another case which we deem in point is *Bacon-McMillan Veneer Co.*, 20 B. T. A. 556. In that case a corporation declared a 50 per cent dividend, to be payable in Liberty Loan bonds. The Liberty bonds, at the time they were paid over to the stockholders in payment of the dividends, had a value in excess of their cost to the corporation. It is there held that the transaction resulted in taxable gain to the corporation. We stated in part:

> The resolution provided that a 50 per cent dividend be declared. A 50 per cent dividend is a definite amount. *It created an obligation of the corporation* to its stockholders. Then when that obligation was satisfied by the distribution of the Liberty Bonds owned by the petitioner, we have a realization of a gain through disposition thereof. When the dividend of 50 per cent was declared the corporation could not satisfy the legal demands of the stockholders by delivering to them bonds less than that value. The corporation discharged its obligation to its stockholders by giving them the bonds which here had a value in excess of the cost. *We think that this is a realization of gain in every substantial sense of the word.* * * * [Italics supplied.]

See also *Callanan Road Improvement Co.*, 12 B. T. A. 1109, where it was held that a similar disposition of property by a corporation resulted in a deductible loss to a corporation.

*Commissioner* v. *Rail Joint Co.*, 61 Fed. (2d) 751, in which *Rail Joint Co.*, 22 B. T. A. 1277, was affirmed, has not been overlooked; it is distinguishable.

Assuming that the petitioner had paid all its debts incurred in acquiring the assets transferred to the Arrowhead Company, which, as determined by the respondent, totaled $63,569.37, with Arrowhead second preferred stock at par, it is apparent that it would not have been necessary to use all of the 708 shares of such stock, the par value of which was $70,800, and in addition it would also have the 200 shares of Arrowhead first preferred stock and 6,400 shares of common. It appears from the records that some debts, including cash advancements to petitioner and the purchase price of the real estate in Duluth, were paid with cash out of the $16,650 cash received from the sale of Arrowhead stock. In 1927 claims aggregating $35,000 were paid with Arrowhead second preferred stock at par. The debts thus paid with such second preferred stock at par and cash total $62,050, leaving $1,519.37 unpaid. However, it further appears that 300 shares of common, 55 shares of second preferred and 15 shares of first preferred were also used to pay indebtedness, but whether the indebtedness so paid was a part of the original in-

debtedness or was indebtedness incurred after the transfer of assets to the Arrowhead Company does not appear. However, it does appear that petitioner still owns 5,915 shares of common and ten shares of second preferred and distributed 189 shares of second preferred to its stockholders in 1927. As a result it has at least 5,915 shares of common and 199 shares of second preferred stock, representing " assets previously offset by the " debts " now extinct."

It is contended that neither company had any funds with which to pay the claims of the creditors of petitioner and neither was able to finance the enterprise. Whether petitioner had funds or not to pay its debts is immaterial. It was not shown to be insolvent and it had Arrowhead stock which was accepted by the creditors at its par value in lieu of cash. As stated in *Service Recorder Co.* v. *Routzahn*, 24 Fed. (2d) 875:

> The value of a thing is not always and solely to be determined by precise methodical computation based upon cash exchanged therefor; and values are sometimes enhanced by faith in the ultimate future of the thing for which those having such faith are willing to hazard their time, money and effort. * * * Within sound limits, the judgment and expectation of those assuming the risk are elements entering into a determination of value.

In our opinion, the transaction herein involved is not materially different in principle from that involved in *United States* v. *Kirby Lumber Co.*, *supra*, and any resulting gain is therefore taxable. See *Bacon-McMillan Veneer Co.*, *supra*.

In order to determine the gain or loss resulting from the transaction it is necessary to ascertain the proper basis to be used in such determination.

The transaction between the petitioner and the Arrowhead Company was a nontaxable transaction under section 203 (b) (3) of the Revenue Act of 1926. The basis to be used under section 204 (a) (6) of the Revenue Act of 1926 in the computation of gain or loss from the sale " or other disposition " of stock acquired upon an exchange of property under section 203 (b) (3), *supra*, is " the same as in the case of the property exchanged." It is therefore necessary to determine the cost to the petitioner of the property or assets transferred to the Arrowhead Company, since the basis of the Arrowhead stock acquired by petitioner is the same as the cost to the petitioner of the property conveyed in exchange for such stock.

As heretofore stated, it appears that the respondent, in computing the asserted deficiency, determined that the total amount expended and incurred by the petitioner in connection with the enterprise taken over by the Arrowhead Company amounted to $63,569.37, which he used as a basis in his computation of the asserted deficiency. The correctness of this amount as representing total liabilities of

the petitioner incurred by it in the acquisition of or in connection with the assets transferred to the Arrowhead Company is apparently not questioned by petitioner.

In computing the gain on the transaction here involved, the respondent used as a basis for the common and first preferred the basis which he used in his computation of gain or loss on the sale by petitioner in 1926 of 185 shares of Arrowhead first preferred stock together with 185 shares of common as bonus, at $100 per unit of one preferred and one common, less a commission of $10 per unit. Since the basis used by the respondent and net amount received is the same, no taxable gain resulted. No question with respect to the determination of the respondent as to such transaction is raised by the petitioner.

The respondent allocated the total basis used by him to the three classes of stock as follows:

| | |
|---|---|
| 6,400 shares of common at $1 | $6,400.00 |
| 200 shares of first preferred at $89 | 17,800.00 |
| 708 shares of second preferred at $55.6065 | 39,369.37 |
| Total cost | 63,569.37 |

The assets transferred by petitioner to the Arrowhead Company are described in the corporate minutes in part as permit or franchise, right of way, plans, maps, drawings, various rights, etc., " deemed of great value," and the reasonable value of the permit was fixed at $25,000. J. B. Finch, who devoted considerable time to the enterprise and has been president of both corporations since their incorporation, and who is a principal stockholder and apparently was the person most actively interested in the enterprise, testified that the corporate minutes adduced in evidence correctly state the facts. However, he also testified that at the time the transfer was made the only assets which the petitioner had to convey to the Arrowhead Company consisted of the permit or franchise to build the bridge, contracts for the purchase of land to serve as approaches to the bridge, on one of which less than $2,000 had been paid and nothing on the other, a few piles in the river, and the claims against the petitioner for promotional and other services, all of very little value. This testimony is in conflict with statements in the minutes of petitioner.

With respect to the construction of the bridge, it is to be noted that the Arrowhead Company assumed and agreed to pay the cost and expenses of the construction work and the engineering services from the commencement of the actual construction work on or about February 15, 1926. The cost of such work and services therefore can not be a part of the liabilities which petitioner was obligated to pay, or a part of the cost of the assets transferred by petitioner.

The petitioner presented no evidence as to the cost to it of the property transferred to the Arrowhead Company or of the total indebtedness incurred in acquiring the assets transferred to such company. At the time the Arrowhead stock was acquired by the petitioner, no allocation of cost as between the various classes of stock was made, at least no evidence to that effect was adduced. .

The petitioner presented no evidence disclosing the persons to whom the 104 shares of Arrowhead second preferred stock were transferred or as to the nature or character of the debts paid therewith, except that 19 shares thereof were transferred in payment of the purchase price of $1,900 of the land or right of way on the Superior side of the bridge and 50 shares thereof were transferred to Paine, Webber & Company in payment of services in addition to the stock to be transferred to them under the finance agreement entered into between that company and the Arrowhead Company. There is no evidence that the creditors agreed or intended to take something of a value less than the full amount or value of their claims. The record merely discloses that the claims totaled $10,400 and that 104 shares of second preferred stock of the par value of $10,400 were paid in liquidation thereof. With respect to the debts paid in 1927 it appears that such creditors were willing to take 350 shares of Arrowhead second preferred stock at par in payment thereof. The first preferred and common were used in obtaining cash, not only to finance the construction of the bridge, but also for the purpose of paying certain of petitioner's obligations, some of which represented cash advancements to the petitioner and part of the purchase price of the Duluth right of way, or real estate. The market value of such stock was fixed in the finance agreement and by actual sales in 1926. No evidence was offered disclosing the terms upon which the second preferred stock was issued. However, it was used and deposited with Paine, Webber & Company in lieu of a bond, and accepted by creditors of petitioner at par as payment. The fact that such stock was highly speculative does not divest it of all value. *Walls* v. *Commissioner*, 60 Fed. (2d) 347; *Commissioner* v. *Swensen*, 56 Fed. (2d) 545; *Collins* v. *Commissioner*, 32 Fed. (2d) 1753; *Service Recorder Co.* v. *Routzahn, supra*.

The petitioner offered or suggested no method for determining the cost of the 104 shares of Arrowhead second preferred stock. The burden of proof is upon the petitioner. The determination of the respondent is presumed to be correct. The opinion of J. B. Finch, who was the only witness to testify on behalf of the petitioner, that the assets transferred for the Arrowhead stock had little value; that the claims against the petitioner had no substantial value or were

not worth the paper written on unless the bridge was constructed; that it was doubtful whether the creditors could realize anything thereon; that the claims were not worth more than the stock given for them; and that the Arrowhead second preferred stock had no ascertainable value and was speculative, is not sufficient, under all the facts and circumstances here, to overcome such presumption.

Furthermore, the Board is not absolutely bound by the opinion of a single witness as to value, but must weigh that opinion in the light of all of the evidence. *American Chemical Paint Co.*, 25 B. T. A. 1208.

If the method of computation used by the respondent is questioned, it is incumbent upon the petitioner not only to show that the respondent erred, but also to prove a correct basis and proper method or sufficient facts from which the Board can determine a correct basis or proper method of allocation or computation. *Alexander D. Falck*, 26 B. T. A. 1359; *Roessler & Hasslacher Chemical Co.*, 25 B. T. A. 915; *J. S. Cullinan*, 19 B. T. A. 930; *Uncasville Mfg. Co.*, 19 B. T. A. 920; *Jacob F. Brown*, 18 B. T. A. 859; *J. S. Cullinan*, 5 B. T. A. 996. The petitioner having failed in this respect, the determination of the respondent must be approved.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

BLACK concurs in the result.