RICHARD A. MACK and GLORIA J. MACK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mack v. Commissioner
Docket No. 309-75.
United States Tax Court
T.C. Memo 1976-359; 1976 Tax Ct. Memo LEXIS 43; 35 T.C.M. (CCH) 1628; T.C.M. (RIA) 760359; November 29, 1976, Filed *43 Held, the useful life and basis of certain properties determined; held, further, the amount of an abandonment loss deduction determined; held, further, the petitioners have failed to meet the substantiation requirements of sec. 274(d), I.R.C. 1954, with respect to various travel, meals, and entertainment expenses and have failed to establish that certain other expenditures were business expenses. Richard A. Mack, pro se. James F. Kidd, for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: *45 The Commissioner determined a deficiency in the petitioners' Federal income tax for 1972 in the amount of $1,344.40. Some of the issues have been settled; those remaining for decision are: (1) Whether the petitioners have established the useful life of various depreciable assets and the basis of some of such assets; (2) whether they are entitled to a deduction for the abandonment of certain property; and (3) whether they are entitled to certain claimed business deductions. FINDINGS OF FACT Some of the facts have been stipulted, and those facts are so found. The petitioners, Richard A. Mack and Gloria J. Mack, husband and wife, maintained their principal residence in Wisconsin when they filed their petition herein. They filed a joint Federal income tax return for 1972 with the Internal Revenue Service Center, Kansas City, Mo.
Sometime in mid-1971, the petitioners purchased a home in Carson City, Nev., for $26,250. They resided there until approximately June 30, 1972, when they moved to Tigerton, Wis. The house had been constructed in 1969 or 1970, and it was a single-family dwelling with three bedrooms and a garage. It was covered with a material called "sump stone" *46 which gave the appearance of white brick. The property was encumbered by a 30-year mortgage loan and a second mortgage loan payable in 10 years. There are no abandoned houses within the neighborhood of the petitioners' house. When the petitioners moved from Carson City, they leased their house (including the furnishings therein) beginning July 1, 1972. The first tenant paid a monthly rent of $250, and the second and present tenant pays a rental of $275 a month. At the time of trial, a real estate agent handled the management of the property. The petitioners made out a detailed inventory of the furnishings of the house, a copy of which was given to the first tenant and another copy of which was introduced into evidence. Among other things, the furnishings included: in the bedroom, a king-size bed with headboard, a 10-drawer mahogany dresser, and a 3-drawer solid mahogany nightstand; in the den were various pieces of office furniture, including a desk, bookcases, and filing cabinets; the living room contained two bed-sofas, corner table, lamps, various African ornamental pieces, fireplace paraphernalia, a swivel chair, and a sheepskin; the kitchen was furnished with a four-burner *47 gas stove, a self-defrosting refrigerator, toaster, can opener, automatic dishwasher, kitchen table and chairs, and bar stool; there were drapes in all rooms, and in the garage, there were assorted lawn equipment and a workbench. They valued their furnishigs at $3,563.50. In computing the value of the furnishings, the petitioners made allowance for the age of each item. None of the furnishings was older than 3 years, and many of them were newer. As of July 1, 1972, the petitioners became the owners of a bar and restaurant in Tigerton, Wis., which consisted of a building, the land on which it was located, and certain equipment used in connection with the business. The purchase price for the Tigerton property was $20,223. The building was constructed of Tamarack logs, which are found in nearby swamps, and was approximately 34 years old when the petitioners assumed ownership of it. The building is heated by three different sources--a wood stove, which is the primary heat source in the bar; a gas log fireplace, which primarily heats the dining room; and finally, an oil furnace, which furnishes heat to the other rooms in the building. Insulation and ventilation are poor throughout *48 the building. Twice since 1972, it was necessary to brace the northeast walls of the dining room since the logs in that corner appeared to be decaying. The sewage facilities of the building have been found to be deficient on two occasions by the Wisconsin Department of Health because effluent was being discharged above grade. Under the contract of sale, $5,000 of the purchhase price was allocable to stock, good will, fixtures, and equipment. Although the contract set forth a list of fixtures and equipment transferred to the petitioners, the amount allocated to each item was not specified. The fixtures and equipment listed in the contract were: tavern bar, back bar, 10 bar stools, refrigerated unit or system in back bar, novelty box with 2 taps, 30 case display cooler, 6 dozen assorted glasses, walk-in cooler, cash register, stainless steel wash and rinse tank with 2 compartments, electric glass washer, juke box, pool table, shuffle board, upright piano, gas log fireplace, 6 tables with 24 chairs, 1 small refrigerator, 2 builtin jet fryers, and about $500 worth of stock. During the period July 2 through December 31, 1972, the petitioners hauled to the dump and discarded some *49 of the fixtures and equipment which they had purchased, either because the item was damaged, dirty, infested with bugs, in violation of the Wisconsin Health Code, or because they decided the item did not belong in the type of dining establishment they contemplated operating. The items discarded and the values assigned to them by the petitioners are as follows: 6 dozen assorted glasses
$ 9.00
Cash register
150.00
Stainless steel two compart-
ment bar sink
200.00
Pool table with balls and cues
150.00
Shuffle board
150.00
Kitchen sink
185.00
3 tables with 12 chairs
375.00
2 built-in jet fryers
230.00
Kitchen and work room floors
200.00
Kitchen cabinets and shelving
150.00
Total
$1,774.00 The petitioners estimated the cost allocable to such items by first considering what a reasonable figure for each of them would be and then by evaluating whether that figure made sense considering the fact that $5,000 was allocable to such items plus all the others listed in the contract. During 1972, the petitioners paid or incurred expenses of $537.27 for meals, travel, lodging, and boxing events. With respect to some of these items, receipts were introduced *50 into evidence, although no diary was kept by the petitioners, and no other documentary or corroborating evidence was introduced. Among the restaurants patronized by the petitioners were those at Fisherman's Wharf in San Francisco, Calif., and Eugene's in Reno, Nev. The petitioner also paid $18.36 for the xeroxing and mailing of a partnership agreement to his father, in an effort to induce his parents to move to Tigerton, Wis. The partnership agreement was never signed, and no formal partnership was formed. During 1972, the petitioner, Gloria J. Mack, paid $4.62 which the petitioners stipulated was spent for entertaining a named individual. However, at trial, the petitioner testified it was spent for some unspecified teaching materials. At the time such purchase was made, Mrs. Mack was a teacher. The petitioners, in their 1972 Federal income tax return, deducted the amounts which they paid for travel, meals, lodging, and entertainment, and for the cost of the partnership agreement and the $4.62 paid by Mrs. Mack. The Commissioner disallowed such deductions in his notice of deficiency. He allowed them depreciation deductions with respect to their Carson City and Tigerton *51 properties, which they had not previously claimed. In their petition, the petitioners disputed the Commissioner's determination of the useful life of such properties and claimed a depreciation deduction for various pieces of equipment they discarded. Various other issues have been settled. OPINION 1. Carson City Property
The parties are in agreement as to the basis in the Carson City property and as to how such basis is to be allocated between the house and the land. In addition, the Commissioner agrees that the petitioners are entitled to depreciation on such property for 6 months on a straight-line method. The only questions remaining concern the useful life of the Carson City house and its furnishings and the basis attributable to such furnishings. The Commissioner has determined a useful life for the Carson City property of 33-1/3 years from July 1, 1972, the approximate date the petitioners leased it. As of that date, the house was already 2 or 3 years old. However, the petitioners claim that the useful life of such property is no more than 15 years. They base their conclusion on the alleged deteriorating marketability of the property, their absent management, *52 and tenant wear and tear on the house. The petitioners have the burden of establishing that the useful life of such property is shorter than that determined by the Commissioner. Mid-State Products Co.,21 T.C. 696, 720 (1954). On this record, the petitioners have failed to establish that the useful life of their Carson City property was less than that determined by the Commissioner. The property was almost new and was subject to a 30-year mortgage, which certainly suggests that its useful life was at least that long. Moreover, nothing in this record would support a finding that the property was located in a deteriorating neighborhood; indeed, there were no abandoned houses in the vicinity. Finally, the petitioners have simply failed to support their assertions that absent management or tenant wear and tear has reduced or will reduce to any appreciable extent the useful life of the property below that of other similar property used in the rental business. Thus, we sustain the Commissioner's determination on this issue. Next, we must decide the petitioners' basis *53 in their furnishings in the Carson City property. They introduced into evidence a complete inventory of all the furnishings, which had been prepared when the property was first leased and given to their first tenant. When the list was prepared, they valued each item and computed to total value of the furnishings to be $3,563.50. However, during the trial of this case, they did not have the individual values, just the total. While the Commissioner agrees they are entitled to some basis in the furnishings, he contends they have completely failed to establish what it should be. After an examination of the items listed in the petitioners' inventory, we are convinced that they are entitled to an allowance for their basis in the furnishings. It appears that such furnishings were relatively new and that the petitioners' valuations were within the realm of reason. Accordingly, using our best judgment, in accordance with the rule of Cohan v. Commissioner,39 F. 2d 540 (2d Cir. 1930), we find their basis in such furnishings to be $3,000. Finally, we must decide over what period of time the petitioners may depreciate their basis in the furnishings. The Commissioner *54 argued that such basis should be added to the basis in the residence and depreciated over the same period of time, which he determined was 33-1/3 years. Although we have approved that useful life for the residence, such period is clearly excessive with respect to the furnishings. While the petitioners have contended that 8 years is the useful life of such furnishings, we believe that 12 years represents a more appropriate period, and we so hold. 2. Tigerton Property
The next issue to be considered is the useful life of the petitioners' bar and restaurant in Tigerton, Wis., and the equipment and furnishings used in connection with it. The parties have agreed upon the purchase price of the building and the land and the amount allocable to each, as well as other adjustments which are to be made to the basis of such property. They also are in agreement that depreciation is allowable for 6 months during 1972. The Commissioner contends that the buildings and the equipment and other furnishings have a composite life of 33-1/3 years. However, the petitioners take the position that the useful life of the building is no more than 12 years and the useful life of the equipment is *55 no more than 7 years. Given the condition of the Tigerton property and the equipment therein, we are convinced that the Commissioner's determination of useful life is excessive; however, we are not persuaded by the petitioners' estimate of 12 years for the building and 7 years for the equipment. Therefore, using our best judgment in accordance with the rule of Cohan v. Commissioner,supra, we find the useful life of the building to be 20 years, and that of the equipment and fixtures to be 15 years. The petitioner also claims a loss deduction for the abandonment of certain equipment which he purchased with the Tigerton property. He estimates that the amount allocable to the abandoned items is $1,774. Section 1.167(a)-8(a)(4) of the Income Tax Regulations specifically allows a loss deduction where a depreciable asset is retired by actual physical abandonment and provides that the amount of the loss is to be measured by the adjusted basis of such asset. Since there is no dispute that the petitioners abandoned certain equipment, the *56 only issue relates to the adjusted basis of such equipment, which in this case, is measured by the cost thereof. Sec. 1012, Internal Revenue Code of 1954. [1]
The petitioners bear the burden of proving the cost allocable to each abandoned item for which they are claiming a loss deduction. Estate of Peter Finder,37 T.C. 411, 423-424 (1961); Twin Ports Bridge Co.,27 B.T.A. 346, 359-360 (1932). After an examination of all of the items purchased by the petitioners, and considering the condition of the abandoned items, we find it difficult to accept the values they have allocated to such items. However, they have established that some amount is allocable to the abandoned items; we think $600 represents a reasonable approximation, and we hold that the petitioners are entitled to a loss deduction in that amount. Cohan v. Commissioner,supra.
3. Miscellaneous Business Deductions
The last issue for decision is whether the petitioners *57 may deduct certain amounts as business expenses. First, they seek to deduct various expenditures paid or incurred in 1972 for meals, lodging, and travel. The petitioner testified that such expenditures were paid or incurred because the petitioners wanted to inspect and observe how various dining establishments were operated so that they could gain some ideas as to how to run the bar and restaurant they contracted to buy at the end of 1971. The petitioners have the burden of proving that such costs are ordinary and necessary expenses, proximately related to their trade or business. William F. Sanford,50 T.C. 823, 826 (1968), affd. per curiam 412 F. 2d 201 (2d Cir. 1969), cert. denied 396 U.S. 841 (1969). After considering the evidence of record, we conclude that the petitioners have failed to establish that such expenses were incurred primarily for business reasons. The petitioner admitted that they never discussed the method of operation with the management of any restaurant they patronized. They merely ate their meals and "observed." In *58 addition, considering the nature of the bar and restaurant they were purchasing, it is difficult to understand what business purpose was served by two trips to San Francisco and a dinner at Fisherman's Wharf. In any event, the petitioners are not entitled to deduct such costs because they failed to meet the substantiation requirements of section 274(d). [2] That provision denies a deduction under section 162 for any traveling expense, including meals and lodging, unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement various items including the amount, date, place, and the business purpose of the expenditure. With respect to many of the items, the petitioners have introduced no receipts or other records, and they have completely failed to substantiate the business purpose of such expenditures by evidence corroborating their testimony. *59 The petitioner also claimed a business deduction for the cost of a number of boxing matches, which, according to his testimony, he attended because of a program with which he was connected at some prison. Such testimony is insufficient to establish that such expenditures were ordinary and necessary and proximately related to his trade or business. William F. Sanford,supra.In addition, under section 274(d), such expenditures must also meet the substantiation requirements set forth in that provision. However, here again, the petitioners have failed to meet those requirements, and accordingly, such expenditures are not deductible. The petitioners offered into evidence a check for $4.62 which they have stipulated was for entertaining someone, but at the trial, the petitioner testified that such amount was spent for teaching materials for the petitioner, Gloria J. Mack. Under Rule 91(e), Tax Court Rules of Practice and Procedure, a stipulation is generally treated as a conclusive admission and binding on the parties. It is clear that if such amount is considered as having been *60 spent on entertaining someone, the petitioners are not entitled to a deduction, since we have absolutely no evidence to show its business purpose. Even if the Court were to allow the petitioners to withdraw their stipulation pursuant to Rule 91(e), the petitioner's testimony would still be insufficient to entitle them to a business deduction for such amount. There is absolutely no evidence which describes the nature of such materials, whether Mrs. Mack was expected or required to purchase them, or whether they were customarily or ordinarily purchased by teachers. On this record, we must conclude that the petitioners have wholly failed to establish they are entitled to a deduction with respect to such expenditure. Finally, the petitioner claimed a business deduction of $18.36, as the cost of xeroxing and mailing a partnership agreement to his father. The petitioner sent such agreement in order to induce his parents to move to Tigerton so that he could help provide for them in their old age. The partnership agreement was never signed, and no formal partnership was ever formed. We hold that such amount is not deductible under section 162 because the petitioner has failed to demonstrate *61 that such costs were incurred in carrying on a trade or business in which he was engaged; no evidence was offered to show that he was a promoter. Furthermore, the costs of acquiring a business enterprise are not generally currently deductible. Cf. Weinstein v. United States,420 F. 2d 700, 701 (Ct. Cl. 1970); Morton Frank,20 T.C. 511, 513-514 (1953); George C. Westervelt,8 T.C. 1248, 1254 (1947).Nor may the petitioner deduct such expenses under section 165(a), as a loss incurred in a transaction entered into for profit, though not connected with a trade or business. Sec. 165(c)(2). The facts of record do not establish that the correspondence between the petitioner and his father was more than a "mere casual preliminary investigation of a prospective business" ( Harris W. Seed,52 T.C. 880, 885 (1969)), and a loss deduction is not available under such circumstances. Morton Frank,supra at 514-515; see Patrick L. O'Donnell,62 T.C. 781, 786 (1974); *62 Harris W. Seed,supra.
Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954.↩
2. (d) Substantiation Required.--No deduction shall be allowed-- (1) under section 162 or 212 for any traveling expense (including meals and lodging while away from home), (2) for any item with respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, or with respect to a facility used in connection with such an activity, * * * unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, or use of the facility, or the date and description of the gift, (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, using the facility, or receiving the gift. * * *↩